## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80414-CIV-DIMITROULEAS/ROSENBAUM

SUNCAST TECHNOLOGIES, L.L.C.,
a Florida limited liability company, and
SUNCAST CORPORATION, an
Illinois corporation,

      Plaintiffs,

vs.

PATRICIAN PRODUCTS, INC.,
a New York corporation,

      Defendant.
_____/
PATRICIAN PRODUCTS, INC.,
a New York corporation,

      Counterclaimant,

vs.

SUNCAST TECHNOLOGIES, L.L.C.,
a Florida limited liability company, and
SUNCAST CORPORATION, an
Illinois corporation,

      Counter-Defendants,
_____/


## <u>ORDER</u>

      This matter is before the Court upon Plaintiffs' Motion to Compel Responses to

Interrogatories and Document Requests ("Motion to Compel") [D.E. 24] and Defendant's Cross-

Motion to Compel Discovery Responses ("Cross-Motion") [D.E. 25]. The Court has fully reviewed

the Motions, Responses, and Replies, and heard from counsel for the parties during a hearing held

on January 10, 2008. During the January 10, 2008, hearing, the Court ruled from the bench on many

of the matters raised in the pending discovery motions.  This Order memorializes the rulings announced at the hearing and also sets forth the Court's rulings with respect to the matters that were taken under advisement at the conclusion of the hearing.

## ***BACKGROUND***

Plaintiffs filed the underlying lawsuit against Defendant in May of 2007 alleging patent infringement of U.S. Patent No. 5,501,036 ("the '036 Patent").  [D.E. 1].  The '036 Patent sets forth an invention which, according to Plaintiffs, "facilitates an even and secure coil, and permits plastic landscape edging products to be stored and shipped in stackable, coiled position without need for external packaging, thus providing a distinct advantage through greater retail display capabilities and savings in packaging costs."  *See* D.E. 24 at p.4.  Plaintiffs claim that the Defendant is selling landscape edging products that infringe on the claims of the '036 Patent.

The instant lawsuit was filed nearly ten years after Plaintiffs first notified Defendant that it was allegedly infringing the '036 Patent.  Specifically, in the summer of 1997, Plaintiffs sent a letter to Defendant asserting infringement of the '036 Patent.  Defendant responded to the letter, and apparently, no legal action was commenced at that time.  *See* D.E. 6 at p. 4 and D.E. 24 at p. 4.  Due to the nearly ten years that elapsed between Plaintiffs' 1997 letter and the filing of this lawsuit, Defendant, in answering the underlying Complaint, raised the affirmative defenses of laches and equitable estoppel.  These affirmative defenses are key to the discovery now being conducted in this case.  More particularly, the defense of laches plays an important role in the discovery disputes now before the Court for consideration.  Indeed, many of the issues raised in the Motion to Compel and Cross-Motion stem from Defendant's affirmative defense of laches.

2

## *DISCUSSION*

**A.     PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs' Motion to Compel [D.E. 24] challenges the completeness of Defendant's responses to Interrogatories No. 5-10 and 16 and seeks supplementation of those responses.[1] Although Plaintiffs raise specific grounds to support their Motion to Compel, they also raise the overriding objection to the manner in which Defendant responded to the interrogatories.   In particular, Plaintiffs object to Defendant's use of general objections that appeared at the beginning of Defendant's interrogatory response document and that were incorporated by reference into each interrogatory response.   Plaintiffs claim that these general objections, along with additional "boilerplate" objections, make it impossible to determine the completeness of Defendant's responses. Plaintiffs further complain that they are left to guess which particular objection might apply to an interrogatory and are also uncertain whether Defendant has provided full discovery responses.   In their Motion to Compel, Plaintiffs seek to have the Court compel Defendant to provide complete responses or to confirm that no information is being withheld based on the stated objections.

During the January 10, 2008, hearing, the Court inquired into the Defendant's use of general objections.   Counsel for the Defendant clarified that no documents were being withheld based on any of the objections asserted in Defendant's responses to Plaintiffs' discovery.   Indeed, Defendant confirmed that every document that it has in its possession that is responsive to Plaintiffs' first round of discovery requests has been produced or was listed in a privilege log that was provided to

---

[1]     The Court notes that, due to its length, Plaintiffs' Motion to Compel technically fails to comply with Local Rule 7.1.C.2, S.D. Fla.  Although the Court will not deny the Motion to Compel on this ground, nor will the Court strike the pages that exceed the twenty-page limit, for future pleadings, the Court directs the parties to comply with all Local Rules.  Should a party need to exceed the page limit, it must obtain permission from the Court prior to filing a document over the limit.

Plaintiffs.  Upon inquiry by the Court, counsel stated that Defendant conducted a thorough search for documents and information and that nothing was being withheld.  As such, Plaintiffs now have a complete response confirming that no information is being withheld on the basis of the stated objections.  To clarify this point in the written record, at the conclusion of the hearing, the Court directed Defendant to verify that a thorough search was conducted and that all documents have been produced or were included in a privilege log that was provided to Plaintiffs, and to file an affidavit by **Friday, January 18, 2008**, certifying these facts.

Having addressed Plaintiffs' argument regarding Defendant's use of qualifiers and objections, the Court now turns to each of the separate responses to the interrogatories and requests for production that Plaintiffs challenge in their Motion to Compel.  Specifically, the Court will review Interrogatories No. 6-10 and 16 and Requests for Production No. 1-12, 14-15, 17-22 and 27-32.[2]

### 1.    Challenged Interrogatory Responses

**Interrogatories No. 6 and 10:**

Plaintiffs challenge Defendant's responses to Interrogatories No. 6 and 10, which relate to Defendant's assertion of the defense of laches.   In addressing Plaintiffs' Motion to Compel as it relates to Interrogatories No. 6 and 10, a brief discussion of the impact of the defense of laches is helpful.  As noted above, Defendant has raised the affirmative defense of laches due to Plaintiffs' perceived ten-year delay in filing suit against Defendant.  The doctrine of laches is an equitable

---

[2]    Plaintiffs' base their objection to Defendant's specific response to Interrogatory No. 5 on Defendant's invocation of "boilerplate" objections, complaining that they cannot determine whether Defendant has nonetheless provided all responsive information, despite its objections. This concern is addressed by Defendant's response at the hearing that all responsive documents have either been provided or have been identified on a privilege log and the Court's order requiring the filing of the affidavit discussed above.  Consequently, the Court does not separately address Interrogatory No. 5 in the body of this Order.

defense to a claim for patent infringement that, if established, may bar the patentee's claim for damages prior to filing suit. *A.C. Aukerman Co. v. R. L. Chaides Construction Co.*, 960 F.2d 1020 (Fed. Cir. 1992). This doctrine assures that "old grievances will some day be laid to rest, that litigation will be decided on the basis of evidence that remains reasonably accessible and that those against whom claims are presented will not be unduly prejudiced by delay in asserting them." *Id.* at 1029 (quoting *Environmental Defense Fund v. Alexander*, 614 F.2d 474 (5th Cir.), *cert. denied*, 449 U.S. 919 (1980)). In short, laches focuses on the dilatory conduct of a patentee and the resulting prejudice which the delay has caused. *Id.* at 1031-1032.

In order to establish the defense of laches, a defendant must prove two factors: (1) that the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) that the delay operated to the prejudice or injury of the defendant. *Id.* at 1032 (citations omitted). The prejudice to the defendant may either be economic or evidentiary. *Id.* Evidentiary prejudice can arise as a result of a defendant's "inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Id.* at 1033 (citations omitted).

A presumption of laches arises where the patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringing activity. *Id.* at 1028. So, in this case, if Defendant can show that Plaintiffs delayed bringing suit for six years after they had actual or constructive knowledge of Defendant's alleged infringing activity, then a presumption of laches will arise. The effect of the presumption is that the burden of going forward with evidence shifts to the Plaintiffs. *Id.* Indeed, with the presumption, the elements of unreasonable delay and prejudice must be inferred, absent rebuttal evidence. *Id.* at 1037. Once the

presumption arises, however, Plaintiffs may offer proof to rebut the laches factors. *Id.* at 1038. This evidence may be directed at showing that Plaintiffs' delay was reasonable or that Defendant suffered no prejudice by the delay (or both). *Id.* (citations omitted). If Plaintiffs are able to raise a genuine issue with respect to either element, the presumption of laches is overcome. *Id.* (citing *Watkins v. Northwestern Ohio Tractor Pullers*, 630 F.2d 1155, 1159 (6th Cir. 1980)). Thus, the presumption disappears from the case, although the defense of laches is not necessarily defeated. *Id.* If, on the other hand, Plaintiffs cannot create a material issue of fact pertaining to either element of laches, the presumption applies. *Id.*

Interrogatories No. 6 and 10 seek information relating to Defendant's actions after receiving the 1997 cease and desist letter. Responses to these interrogatories are relevant and could potentially assist Plaintiffs with rebutting Defendant's defense of laches. Indeed, Defendant's actions after receiving the 1997 letter may tend to show that Plaintiffs' alleged delay in filing suit was reasonable. For instance, if Defendant stopped selling the Accused Product after receiving the 1997 cease-and-desist letter, this information is highly relevant to why Plaintiffs did not pursue their infringement claim until 2007. Furthermore, if Defendant did not begin selling its product again before six years prior to Plaintiffs' institution of this suit, Defendant may well not factually qualify to invoke the laches presumption. On the other hand, as a factual matter, if Defendant continued selling the Accused Product following receipt of the 1997 cease-and-desist letter and did not stop selling the product prior to the suit, Defendant's actions might be deemed a "continuing tort." *See Aukerman*, 960 F.2d at 1031. Continuing tortious acts may be viewed as a unitary claim. *Id.* As such, in that case, Defendant may well be able to make a *prima facie* showing on the first element of laches. With this background in mind, the Court addresses Interrogatories No. 6 and 10.

**Interrogatory No. 6:**

> "If the "accused product" was first sold in the U.S. in or before 1997, state whether sales of the "accused product" ever ceased, or were substantially diminished in scope, anytime after mid-1997. If so, state the reasons for, and circumstances surrounding, such change."

**Defendant's Response (after assertion of objections):**

> "Defendant's sales of the accused product have increased steadily since its introduction with the exception of 1997-1999 during which time Defendant did not sell to Home Depot." Defendant's supplemental response stated, "After a reasonable search, no further information exists."

In addition to their complaints regarding the use of objections, Plaintiffs also state that the response to the interrogatory is incomplete. Plaintiffs assert that Defendant failed to provide a description of the circumstances surrounding any cessation or diminution in sales. Plaintiffs argue that due to the nature of the laches defense asserted, Defendant must answer the interrogatory with more particularity. The Court agrees with Plaintiffs. Defendant's response does not make clear whether the sale of the Accused Product ceased altogether or merely diminished, nor does the response indicate the extent of any diminution. Additionally, Defendant has not set forth the circumstances surrounding its cessation of sales of the Accused Product to Home Depot. In light of *Aukerman*, this information is highly relevant to rebut Defendant's defense of laches. As such, Defendant is directed to supplement its response to Interrogatory No. 6 to clearly state (a) whether Defendant's sale of the Accused Product ceased altogether during the 1997-1999 time frame or whether it merely diminished; (b) the extent of any diminution; and (c) the circumstances surrounding the lack of sales to Home Depot during 1997-1999. Defendant must provide information regarding whether it was Defendant's decision not to sell the Accused Product to Home Depot during 1997-1999 or whether Home Depot made that decision and why the decision was

made, to the extent that Defendant knows.  Defendant's supplemental response must be provided to

Plaintiffs by no later than **Wednesday, January 23, 2008.**

> **Interrogatory No. 10:**
>
>> "With reference to the correspondence attached to these Interrogatories as Exhibit "A", state all actions undertaken by PATRICIAN PRODUCTS, INC. as a result of these communications, including actions related to the sale and/or distribution of any landscape edging products made or sold by PATRICIAN PRODUCTS."
>
> **Defendant's Response (after assertion of objections):**
>
>> "Defendant sent two responses to the 1997 cease and desist letter in June and September 1997, copies of which have already been provided to Plaintiff."  Defendant's supplemental response stated, "After a reasonable search, no further information exists."

As with Interrogatory No. 6, Plaintiffs claim that the assertion of the laches defense makes

the answer to this interrogatory highly relevant.  Plaintiffs claim that the response to Interrogatory

No. 10 is incomplete because it fails to provide information about Defendant's <u>actions</u> regarding

sales and distribution of landscape edging products.  Plaintiffs argue that the purpose of the

interrogatory is to determine what Defendant's activities were concerning the Accused Product in

the years following the 1997 letter alleging infringement.  D.E. 24 at p. 16.  Put simply, the

interrogatory is a way to inquire into the basis and support for Defendant's defense of laches.  At the

hearing, the Court announced that it agreed, in part, with Plaintiffs.  Because the affirmative defense

of laches has been asserted, it is appropriate for Defendant to clarify what actions it took as a result

of the 1997 cease-and-desist letter issued by Plaintiffs.  In this regard, the Court directed the

Defendant to clarify whether it took any other actions in response to the 1997 letter besides sending

two responsive letters and hiring counsel, as stated by Defendant at the hearing.  The Court further

explained that the Defendant must clarify whether it merely hired counsel and sent the two

responsive letters or took other action in response to the 1997 letter.  For example, if applicable, Defendant must state whether it took any action relating to the sale and/or distribution of the Accused Product.[3]  The Court instructs Defendant to supplement its response to Interrogatory No. 10 by no later than **Friday, January 18, 2008.**

> **Interrogatory No. 7**:
>
>> "Identify by product number, verbal description, and reference to visual depiction all landscaping edging products made or sold by Patrician Products between 1994 and 2007."
>
> **Defendant's Response:**
>
>> After objecting to the interrogatory as overbroad due to its reference to products other than the"Accused Product" at issue, Defendant responded:
>> "Defendant will produce documents sufficient to identify the product numbers associated with the accused products."  Defendant' supplemental response stated, "Defendant produces herewith documents bearing Bates ranges PAT0308-0310, PAT0323-0325."

As discussed at the hearing, the overriding issue with Interrogatory No. 7 arises from whether Defendant should be made to respond to the interrogatory with reference to products other than the Accused Product.  Plaintiffs' counsel argued at the hearing that information concerning Defendant's products other than the Accused Product was, in fact, relevant to this case.  Counsel opined that information regarding Defendant's other products could assist an expert in determining the context of Defendant's sales after Defendant received the 1997 cease-and-desist letter.  Plaintiffs' counsel surmised that information regarding sales of other products could lead to information showing that Defendant did not sell the Accused Product continuously from 1997-2007.  However, when asked

---

[3]     As also stated during the January 10, 2008, hearing, Defendant's objection was sustained and this interrogatory was narrowed to seek information regarding the Accused Product. As set forth, *infra*, the Court found that only discovery relating to the Accused Product was relevant.

by the Court how information regarding sales of other products could do this, counsel, to his credit, candidly responded that he was speculating on what an expert would be able to infer from this type of discovery.   In essence, Plaintiffs' counsel conceded that he could not fully articulate how Defendant's sales of other products was relevant.

Consequently, the Court announced at the hearing that it was narrowing Interrogatory No. 7 (and all other similar discovery requests) to the Accused Product.   The undersigned cited the standard of relevance set forth in Federal Rule of Civil Procedure 26.   Rule 26(b)(1), Fed. R. Civ. P. provides, in pertinent part, that parties

> may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things . . . .   Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 26(b)(1), Fed. R. Civ. P.   While the scope of discovery is broad, it is not unbounded.   Here, because the relevancy of the discovery request was not readily apparent, the party seeking the discovery (*i.e.*, Plaintiffs) had the burden to show the relevancy of the request.   *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006); *Kaufman v. Western Sugar Cooperative, Inc.*, 2007 WL 2509480, *3 (D. Neb. Aug. 29, 2007).   Because Plaintiffs' counsel conceded that he was not able to do so, the Court limited the discovery requests to the Accused Product.[4]

**Interrogatory No. 8**:

> For each such product identified in No. 7 above, identify all wholesale customers of Patrician Products. To the extent that Patrician Products sold any such product itself, directly to end consumers, include

---

[4]   The Court advised Plaintiffs' counsel during the hearing that if he could later meet his burden of demonstrating how the information on Defendant's other products was relevant, the Court would again consider the issue.

10

identification of Patrician Products and the manner in which such
sales occurred.

**Defendant's Response (after assertion of objections):**

"Defendant will produce documents sufficient to [sic] customers to
whom it has sold the accused products."  Defendant's supplemental
response stated, "Defendant produces documents herewith bearing
Bates ranges PAT0311-0322."

Plaintiffs have two complaints regarding Defendant's response to Interrogatory No. 8.  First,

Plaintiffs assert that in response to the discovery request, Defendant merely generated a list of its

wholesale customers without providing addresses or contact information for those customers.

Additionally, in relation to the supplemental response (and documents produced therewith), Plaintiffs

argue that Defendant merely gave summaries of sales broken down by product number and did not

provide the underlying documents from which this information was obtained.  Plaintiffs claim that

the refusal to produce the underlying documentation prevents Plaintiffs from verifying the accuracy

of the information contained in the summaries and also prevents Plaintiffs from identifying the

customers to whom the products were sold.[5]

During the January 10, 2008, hearing, Defendant confirmed that in response to Interrogatory

No. 8, it produced a list of its customers identifying the customer name, items sold, and the quantity

of products sold.  Defendant confirmed that the list did not include an address or contact information

for the customers.  However, Defendant indicated that it would go back and retrieve the missing

information, if available.  In this regard, Defendant stated that it would supplement its response and

provide contact information for each of the customers listed.  As such, the Court directed Defendant

---

[5]     The complaint regarding lack of access to Defendant's database was also asserted in
relation to Interrogatory No. 7.  For the same reasons set forth above, Plaintiffs' request for
access to the database is denied.

to provide Plaintiffs with the contact information for the customers listed by **Friday, January 18, 2008,** to the extent the information is in its possession, custody, or control.

Defendant further verified that the summaries produced were generated from raw data in Defendant's computer database.  Noting that Defendant and Plaintiff are competitors, Defendant stated that it objected to producing the entire database because it contains information relating to products other than the Accused Product.  Defendant also confirmed that the summaries produced contained all of the information existing in the database pertaining to the Accused Product and that there was no additional information relating to the Accused Product to be gained from the database. Because the undersigned found that discovery relating to Defendant's other products was not relevant in this matter, Plaintiffs' request to access the Defendant's database was denied.  However, the Court directed Defendant to file an affidavit affirmatively stating that the summaries produced contain all of the information regarding the Accused Product and that the database does not contain any additional responsive information concerning the Accused Product.  The Court directed Defendant to file its affidavit by no later than **Friday, January 18, 2008.**

**Interrogatory No. 9**:

> "As to all products identified in No. 7 above, and all wholesale customers listed for No. 8 above, list all SKU Numbers which correspond to each product so listed, from 1994 thru 2007."

**Defendant's Response (after assertion of objections):**

> "See responses to Interrogatory Nos. 7 and 8."  Defendant's supplemental response stated, "See supplemental responses to Interrogatory Nos. 7 and 8.  Defendant does not use SKU numbers, only model numbers to identify its products."

Plaintiffs claim that Defendant's response to Interrogatory No. 9 exemplifies "obstructive" discovery tactics.  They explain that an SKU is a unique identifier for each product that is ordered

from a supplier.  Plaintiffs claim that if Defendant has maintained even one record of its transactions with any of the retailers selling its products, the record would reveal the SKU, and thus, Defendant must provide this information.  During the hearing, Defendant explained that its customers, such as Home Depot and Lowes, assign SKU numbers to Defendant's products and that Defendant does not use SKU numbers.  Defendant further elaborated that it had previously provided a document to Plaintiffs that correlates Defendant's products with Home Depot's SKU numbers.  Ultimately, Defendant claimed that it has produced what it has in terms of information relating to SKU numbers and in order to obtain any other information, it would have to reach out to its customers and inquire into the SKU numbers assigned by them.

At the conclusion of the hearing, the Court directed Defendant's counsel to go back and confirm with his client that it does not use SKU numbers and is not aware of the SKU numbers used when dealing with customers.  The Court instructed Defendant to supplement its response if additional information is found.  If, however, no additional information is found, the Court directed Defendant to provide an affidavit informing Plaintiffs that such information is not within its possession, custody, or control.  The affidavit or supplemental information must be provided to Plaintiffs by no later than **Friday, January 18, 2008.**  The Court specifically found, however, that Defendant is under no obligation to reach out to its customers to obtain additional information regarding the SKU numbers assigned by those customers.

**Interrogatory No. 16**

Finally, Plaintiffs challenge Defendant's response to Interrogatory No. 16 regarding Defendant's claims of non-infringement.  Because this challenge is directly related to Defendant's Cross-Motion, it will be discussed together with Defendant's Motion below.

**2.      Challenged Responses to Requests for Production**

In their Motion to Compel, Plaintiffs also assert that Defendant failed to provide complete responses to Document Requests No. 1-12, 14-15, 17-22, and 27-32.  As with the interrogatory responses, Plaintiffs complain that, due to the incorporation of objections, "it is impossible to determine which of these objections applies to any particular document request, as opposed to those which are perhaps merely hypothetical....[and] cast doubt as to whether the Defendant is withholding information on the basis thereof."  D.E. 24 at 20.

As noted above, during the hearing, counsel for Defendant clarified that no other responsive documents have been withheld on the basis of any objection.  Additionally, the Court instructed the Defendant to provide an affidavit attesting to the fact that a thorough search was conducted and that all responsive documents have been produced or are listed in a privilege log.  This requirement eliminates any doubt by the Plaintiffs that Defendant is withholding responsive documents on the basis of an asserted objection.

**B.      DEFENDANT'S CROSS-MOTION TO COMPEL**

Defendant's Cross-Motion [D.E. 25] seeks an order compelling Plaintiffs to respond to two categories of discovery requests: (1) Plaintiff's delay in instituting the present action, which relates to Interrogatories No. 3, 11, 13, 15 and Requests for Production No. 16, 19, 26, and 37; and (2) Plaintiffs' infringement contentions, which relate to Interrogatories No. 2 and 4.

**1.      Discovery Regarding the Alleged Delay in Instituting Suit**

As noted above, Defendant has pled the affirmative defenses of laches and equitable estoppel. In its Cross-Motion to Compel [D.E. 25], Defendant claims that Plaintiffs have refused to provide substantial responses to discovery requests focused on these affirmative defenses.  Put simply, Defendant asserts that Plaintiffs have withheld information regarding their alleged delay in bringing

14

suit against Defendant.  Defendant seeks for the Court to compel Plaintiffs to disclose information and documentation revealing Plaintiffs' knowledge of Defendant's sales of the Accused Product during the 1997-2007 time frame.

During the hearing, Plaintiffs confirmed that they are not withholding any additional documents from Defendant in relation to the affirmative defenses of laches or equitable estoppel. Plaintiffs also asserted that they have fully responded to the interrogatories posed on these grounds. Indeed, Plaintiffs explained that they have not been tracking Defendant's products since they issued the 1997 cease-and-desist letter.  Instead, Plaintiffs claim that in the latter part of 2006, they saw the alleged infringing product in a Lowes store and then instituted the instant lawsuit.  Plaintiffs agreed with the Court that if any information or documents existed that establish that Plaintiffs knew that Defendant had continued to sell the Accused Product after receiving the 1997 cease-and-desist letter, they would be obligated to provide this discovery to Defendant.

At the conclusion of the hearing, the Court, as it had done with Defendant, directed Plaintiffs to submit an affidavit that they had conducted a thorough search and that no other documents responsive to Defendant's discovery requests are within their possession, custody, or control.  The Plaintiffs must also certify that they have provided complete responses to the interrogatories at issue. In sum, Plaintiffs must verify through an affidavit that they have either provided Defendant with all responsive documents or have listed them on a privilege log, and likewise verify that all responsive information has been provided.  The affidavit must be filed by **Friday, January 18, 2008.**

    **2.    Discovery Regarding Plaintiffs' Infringement Contentions**

Besides Defendant's laches and estoppel-related discovery requests, Defendant also seeks to compel better responses to other interrogatories and production requests.  In its brief, rather than specifying a particular basis for compelling a response unique to each such contested discovery

request, Defendant chooses to address collectively the reasons supporting its Cross-Motion as it pertains to these other discovery requests.  Similarly, at the January 10th hearing, while Defendant alleged shortcomings in several of Suncast's responses, the overriding gist of Patrician's concerns in this regard boiled down to Suncast's alleged refusal to provide its proposed claim construction and to divulge its infringement contentions to Patrician.

In response, Suncast argues that it has, in fact, given Patrician its infringement contentions in the form of a claim chart and that it is unreasonable for Patrician to expect Suncast to construe each and every word of every claim allegedly infringed by Patrician, as Suncast interprets Patrician to demand.  Additionally, Suncast asserts, the Court should not heed Patrician's demands, in view of Patrician's refusal to provide Suncast with Patrician's non-infringement claims.  Suncast seeks this information in Suncast's Interrogatory No. 16 and likewise requests a court order compelling the production of this information in its Motion to Compel, mentioned *supra*.

Because the parties have chosen to link Patrician's efforts to obtain Suncast's claim construction and infringement contentions with Suncast's attempts to secure Patrician's non-infringement claims, the Court now considers the three requests together.  Essentially, the parties' motions require the Court to evaluate (1) whether the parties are entitled to the information and documents they seek in their various requests, and, (2) if so, in what sequence the Court should require the parties to provide the information and documents at issue.

The parties have directed the Court to various cases considering motions to compel involving similar discovery requests, and the Court has reviewed these cases.  The Court has also conducted its own research, examining the local patent rules of other courts.  Towards this end, the Court has reviewed the Patent Local Rules of the Northern District of California, the Patent Local Rules of the Northern District of Georgia, the Court of Federal Claims's Standard Special Procedures Order for

Cases under 28 U.S.C. §1498(a), the Local Patent Rules of Court of the Western District of Pennsylvania, and Appendix M to the Local Rules of the Eastern District of Texas, Rules of Practice for Patent Cases.  While, plainly, these local patent rules from other districts and courts do not control the proceedings in the instant case, the Court recognizes that each set of local patent rules provides a different court's solutions to common discovery disputes in patent cases.  Moreover, the resolutions suggested by the various local patent rules embody the collective wisdom and experience of groups of judges and practicing patent lawyers who, on repeated occasions, have addressed the very discovery issues covered by the local patent rules.  Indeed, as the Northern District of Georgia has noted, ". . . [T]he Local Patent Rules were intended to address the types of disputes which frequently arise in patent cases but which are generally addressed similarly. . . ."  Consequently, the Court finds the local patent rules of these other districts to provide instructive insight into identifying proper topics of discovery unique to a patent suit, and suggesting the correct sequencing of such discovery.

### a.    The Appropriateness of the Discovery Requests

As noted above, Defendant alleges that Plaintiffs have failed to respond adequately to Defendant's interrogatories and production requests seeking Plaintiffs' infringement contentions and related documentation, as well as to Defendant's interrogatories and production requests asking for Plaintiffs' proposed claim construction.  Likewise, Plaintiffs complain that Defendant has wrongly refused to respond substantively to Plaintiffs' Interrogatory No. 16 calling for Defendant's non-infringement contentions.

The Court first turns to the propriety in general of contention interrogatories, which both parties have employed in attempting to learn of the infringement, non-infringement, and claim construction contentions.  Rule 33(c), Fed. R. Civ. P., provides, in relevant part, "An interrogatory

17

otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact . . . ."  As explained in the Advisory Committee Notes to the 1970 Amendments to Subsection (b)[6] of Rule 33, "[R]equests for opinions or contentions that call for the application of law to fact . . . can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery."   Indeed, "discovery is designed to allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case."  *O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947); Wright & Miller §2001; Fed. R. Civ. P. 33, Advisory Committee's Note to 1970 Amendment of Subsection (b)).   Thus, contention interrogatories constitute a valid and constructive discovery tool when used correctly.

Among other forms of permissible contention interrogatories, courts have repeatedly upheld infringement and non-infringement contention interrogatories.  *See, e.g., Exxon Research & Eng. Co. v. U.S.*, 44 Fed. Cl. 597, 601-02 (Fed. Cl. 1999) (authorizing use of infringement contention interrogatories); *Protective Optics, Inc. v. Panoptx, Inc.*, 2007 WL 963972, *2 (N.D. Cal. Mar. 30, 2007) (allowing non-infringement contention interrogatories); *Tritek Technologies, Inc. v. U.S.*, 63 Fed. Cl. 740, 751 (Fed. Cl. 2005) (describing anticipated answers to non-infringement contention interrogatories as "important to Plaintiff's case").   Moreover, as a matter of practice, various courts' local patent rules  expressly require the parties to divulge their infringement and non-infringement contentions.  *See, e.g.,* Patent L.R. 3-1, N.D. Cal. ("Disclosure of Asserted Claims and Infringement

---

[6]The 1993 amendments to Rule 33, Fed. R. Civ. P., renamed what was formerly subsection (b) to subsection (c).

Contentions"); Patent L.R. 4.1, ("Infringement Contentions"), L.R. 4.2 ("Response to Infringement Contentions"), & L.R. 4.4(a) ("A plaintiff seeking a declaratory judgment of patent invalidity or non-infringement shall . . . make its Disclosure of Invalidity Contentions . . . ."), N.D. Ga.; Standard Special Procedures Order for Cases under 28 U.S.C. §1498(a) ("SSPO"), Sections 8 ("Initial Disclosure of Asserted Claims") and 9 ("Discovery: Claim Chart" and "Response Chart"), Fed. Cl.; Local Patent Rules 3.2 ("Disclosure of Asserted Claims and Infringement Contentions") and 3.4 ("Non-infringement and Invalidity Contentions"), W.D. Pa.; Patent Rule 3-1, L.R., E.D. Tex. ("Disclosure of Asserted Claims and Infringement Contentions"). These local rules similarly require the parties to produce documents relating to their infringement and non-infringement contentions. *See, e.g.,* Patent L.R. 3-2, N.D. Cal.; Patent L.R. 4.1(c), N.D. Ga.; SSPO, Section 8.c, Fed. Cl.; Local Patent Rules 3.3 and 3.5, W.D. Pa.; Patent Rule 3-2, L.R. E.D. Tex, App. M. Taking these cases and various local patent rules into consideration, the Court finds that Plaintiffs must provide Defendant with their infringement contentions, and likewise, Defendant must give Plaintiffs its non-infringement contentions.

In the instant case, Plaintiffs assert that they have, in fact, supplied their infringement contentions to Defendant in the form of a Claim Chart, along with additional information provided in their responses to Defendant's infringement contention interrogatories. Defendant, on the other hand, argues two deficiencies in Plaintiffs' position: (1) Plaintiffs' Claim Chart does not disclose its infringement contentions on an element-by-element basis, and (2) Plaintiffs' Claim Chart is of little value without an accompanying claim construction by Plaintiffs.

Plaintiffs in this case have claimed literal infringement. Defendant's Cross-Motion at p. 11 (quoting Plaintiffs' Supplemental Response to Interrogatory No. 2 as stating that "the infringement . . . outlined in the Claim Chart is literal as to all elements of the Asserted Claims"). To prevail on

that position, Plaintiffs "must supply sufficient evidence to prove that the accused product . . . meets every element or limitation of a claim." *Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) (citation omitted).  Consequently, there can be no doubt that Defendant's request for Plaintiffs' element-by-element infringement allegations involves relevant material that is properly the subject of contention interrogatories.  Plaintiffs, therefore, have an obligation to respond fully to Defendant's demand for Plaintiffs' contentions regarding how the Accused Product infringes each element of each claim allegedly infringed.

The Court, however, has carefully reviewed Plaintiffs' Claim Chart and notes that it may already provide the required information.  The Chart contains three columns labeled "Claimed Elements of the Suncast 5,501,036 Patent" ("Column 1"), "The Patrician Landscape Edging" ("Column 2"), and "Infringed Claims as Found Within the Patrician Landscape Edging" ("Column 3").  Column 1 purports to separate by row the elements of the '036 Patent alleged by Plaintiffs to be infringed by the Accused Product.  For instance, five different rows of the chart are devoted to addressing what Plaintiffs claim to be the particular elements of Claim 1 of the '036 Patent infringed. Column 2 features photographs or, where appropriate, drawings, of the Accused Product or the relevant part of the Accused Product.  These photographs are accompanied by arrows, labeled with letters such as "A," "B," etc.  Finally, Column 3 of the Chart provides a written description of the correspondingly labeled part of the photograph appearing in Column 2.  As an example of the manner in which the three columns work together in this chart, one of the entries in Column 3 relating to what is characterized by Plaintiffs in Column 1 as an element of the '036 Patent reads, "The **Patrician** grass edging device [A] is a length of flexible plastic material having a longitudinally

extending upper body portion [B], and."[7]  (emphasis in original).  As discussed above, Column 2 pictorially identifies the "[A]" and "[B]" of this entry, using arrows and labels.

Although Plaintiffs' identification by letter of sometimes multiple parts of the Accused Product in a single photographic entry in Column 2 of the Claim Chart indicates that Plaintiffs may note more than one allegedly infringed element per row of its Claim Chart, this manner of presentation does not change the fact that Plaintiffs, nonetheless, appear to have identified in their Claim Chart each element as they view it of each allegedly infringed claim.  To the extent that Plaintiffs' Claim Chart neglects to identify any particular element of an allegedly infringed claim, Defendant's Cross-Motion is granted, and the Court directs Plaintiffs to amend their Claim Chart to reflect in a discernible manner each element of every allegedly infringed claim.  To the extent that Defendant's Cross-Motion may seek an order from the Court requiring Plaintiffs to take the same information already appearing in their Claim Chart and break it down into additional rows so that each allegedly infringed element is parsed on a row-by-row basis, the Court denies Defendant's request.  In reaching this conclusion, the Court further notes that none of the local patent rules consulted require such a format.  Nor do any of the cases relied upon by Defendant.[8]

Turning to Defendant's interrogatories seeking Plaintiffs' claim construction, the Court finds that such contention interrogatories are also permissible and appropriate.  Analyzing whether a party has infringed a patent involves two steps: (1) determining the meaning and scope of the patent claims

---

[7]The next part of the claim is continued in the next row of the Claim Chart.

[8]While *Conopco, Inc. v. Warner-Lambert Co.*, 2000 WL 342872 (D.N.J. Jan. 26, 2000), ordered the plaintiff in that case to produce a claim chart showing how it was applying the limitations in its patent claims to the accused product on an element-by-element basis, unlike in the instant case where Plaintiffs filed their Claim Chart with their Complaint, the plaintiff in *Conopco* had resisted producing a claim chart of any type.  Moreover, nothing in *Conopco* inherently requires that the alleged infringed elements each appear on separate rows of the chart.

asserted to be infringed, also known as "claim construction," and (2) comparing the properly construed claims to the accused product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  To understand the meaning of patent claims, the court considers the claims, the specification, the prosecution history, and extrinsic evidence such as expert testimony, including evidence of how those skilled in the art would interpret the claims.  *Id.* at 978.  This often occurs following a hearing pursuant to *Markman*, 52 F.3d 967.  Thus, not only is a party's proposed claim construction plainly relevant under Rule 26(b)(1), Fed. R. Civ. P., but also, each party must disclose and advocate its proposed claim interpretation before infringement may be determined.

For these reasons, it is not surprising that many courts have allowed claim construction interrogatories.  *See, e.g., S.S. White Burs, Inc. v. Neo-Flo, Inc.*, 2003 WL 21250553, *2 (E.D. Pa. May 2, 2003); *Gen. Elec. Co. v. DR Systems, Inc.*, 2007 WL 1573625 (E.D.N.Y. May 25, 2007); *Whitserve LLC v. Comp. Patent Annuities N. America, LLC*, 2006 WL 1273740 (D. Conn. May 9, 2006).  Indeed, all of the sets of local patent rules reviewed by this Court not only permit a party to discover its opponent's proposed claim construction, but require each party to divulge its proposed claim construction and supporting materials.  *See, e.g.,* Patent L.R. 4-1 and 4-2, N.D. Cal.; Patent L.R. 6.2, N.D. Ga.; SSPO Section 11, Fed. Cl.; Local Patent Rule 4.3, W.D. Pa.; Rule 4-2, L.R. E.D. Tex, App. M.

The fact that a party may be required to provide its proposed claim construction, however, does not mean that a party necessarily must interpret each and every word of every claim allegedly infringed.  In determining the terms that Plaintiffs in this case must construe, the Court once again finds other courts' local patent rules to provide helpful guidance.  Other courts require the parties to exchange lists of claim terms that the party contends should be construed by the Court, and to work together to narrow the list of contested claim terms.  *See, e.g.,* Patent L.R. 4-1, N.D. Cal.;

Patent L.R. 6.1, N.D. Ga.; Rule 4-1, L.R., E.D. Tex., App. M.  These courts also require the parties to make a simultaneous exchange of the proposed construction of each claim term in controversy, as well as the aspects of the specification or prosecution history, and an identification of extrinsic evidence, that supports each proposed interpretation.  *See* Patent L.R. 4-2, N.D. Ga.; Patent L.R. 6-2, N.D. Ga.; Rule 4-2, L.R., E.D. Tex., App. M.

This Court sees the value in such a procedure.  While ensuring that both parties are aware of the other's theory of claim construction, the procedure, nevertheless, does not impose a burden any greater than necessary on either party.  Both parties must come forward at the same time with a  proposed claim interpretation for each term that either party argues to be in controversy.  Thus, a party has no incentive to argue that a term may be in controversy if it truly is not, since doing so imposes the same burden on that party as on its opponent.

In the pending case, to their credit, counsel divulged at the hearing that they were working in good faith and had already taken steps towards identifying a limited universe of terms in controversy.  The Court directs the parties to finalize that list of terms that they intend for the Court to construe eventually.  Once the parties arrive at a finite list of terms, the Court orders that they engage in a simultaneous exchange of proposed term construction, consistent with the schedule indicated below.

**b.      The Sequencing of Discovery**

Having required Plaintiffs to identify any elements of their allegedly infringed claims not already indicated in their Claim Chart and Defendant to respond to Plaintiffs' Interrogatory No. 16 seeking Defendant's non-infringement contentions, as well as having directed the parties to develop a list of terms in controversy and to exchange proposed interpretations of such terms, the Court now turns to the order in which the parties must conduct these aspects of discovery.  "The court may order

discovery in a specified sequence 'for the convenience of the parties and witnesses and in the interest of justice.'" *Chamberlain Group v. Interlogix, Inc.*, 2002 WL 467153, *5 (N.D. Ill. Mar. 27, 2002) (quoting Rule 26(d), Fed. R. Civ. P.). In making this determination, the Court has considered cases and local patent rules of other courts, as well as the nature of the discovery requested.

The Northern District of Georgia, as embodied in its Local Patent Rules, has required parties to turn over their infringement and non-infringement contentions within the same time period. *See* Patent L.R. 4.4(a), N.D. Ga. The Western District of Pennsylvania and the Northern District of Illinois, on the other hand, have concluded that the party suing for infringement must disclose its contentions first.[9] *See, e.g.,* Patent Local Rule 3.4, W.D. Pa.; *Chamberlain Group*, 2002 WL 467153 at *4-*5. In support of this solution, the *Chamberlain Group* Court has explained that a defendant "should not have to guess how [the plaintiff] believes its patents are infringed." *Id.* at *5.

The Court notes, however, that a claim seeking a declaratory judgment of non-infringement constitutes its own action. Thus, parties may and do sue for such declaratory judgments of non-infringement even when they have not first been sued by a party alleging infringement. When that happens, the party arguing non-infringement surely is not entitled to require the defendant in such a case to give the plaintiff infringement contentions prior to the defendant's being permitted to receive non-infringement contentions from the suing plaintiff. The Court cannot discern any reason why the situation should be any different in a case where the parties sue and counterclaim for infringement and non-infringement, respectively. Consequently, the Court will set a deadline of **January 28, 2008,** for Plaintiffs to amend their Claim Chart as necessary and to deliver to Defendant any supporting materials, and for Defendant to reveal on the same day its non-infringement

---

[9] The local patent rules of the Northern District of California, the Federal Claims Court, and the Eastern District of Texas do not expressly address non-infringement contentions.

contentions to Plaintiffs and to arrange for Plaintiffs to receive any supporting materials.

With respect to the claim construction, the Court's review of other courts' local patent rules demonstrates that all of these courts make the exchange of proposed claim construction occur after the deadline for providing infringement contentions.  Thus, the Court orders the parties to identify the universe of claim terms at issue by **January 25, 2008.**  The parties will then have until **February 1, 2008,** to provide each other with their proposed interpretation of the terms at issue.

### *CONCLUSION*

Accordingly, Plaintiffs' Motion to Compel Responses to Interrogatories and Document Requests [D.E. 24] is hereby **GRANTED IN PART and DENIED IN PART** as set forth in this Order. Likewise, for the reasons set forth herein, Defendant's Cross-Motion to Compel Discovery Responses [D.E. 25] is **GRANTED IN PART and DENIED IN PART** in accordance with this Order.  Additionally, both parties' requests for attorneys' fees incurred in connection with their corresponding Motions to Compel are hereby **DENIED**.  The Court finds that in both situations

reasonable people could differ as to the appropriateness of the actions taken by the opposing party.[10]

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 17th day of January, 2008.

ROBIN S. ROSENBAUM
United States Magistrate Judge

cc:    Honorable William P. Dimitrouleas
       counsel of record

---

[10]    Federal Rule of Civil Procedure 37(a)(4) provides that the court shall require reasonable expenses incurred in making the motion, including attorney's fees, to be paid by the opposing party, unless the opposing party's opposition to the protective order was "substantially justified, or that other circumstances make an award of expenses unjust."  "The Supreme Court has clarified that [a party's] discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Devaney v. Continental Amer. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)); *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997).